[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15994

_____

Agency No. A91-986-962

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 21, 2009
THOMAS K. KAHN
CLERK

YVON DESTIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 21, 2009)

Before EDMONDSON, BLACK and SILER,* Circuit Judges.

_____

*Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

PER CURIAM:

Petitioner Yvon Destin ("Petitioner"), a native and citizen of Haiti and lawful permanent resident of the United States since 1990, asks this Court to review decisions of the Board of Immigration Appeals ("BIA"). The BIA reversed the Immigration Judge ("IJ") twice: first after the IJ terminated proceedings and second after the IJ granted cancellation of removal. The BIA then ordered Petitioner removed from the United States to Haiti. No reversible error has been shown; we affirm the BIA's decision.

Background

For this appeal these are the issues: (1) whether Petitioner's 1999 conviction for assault and battery with a dangerous weapon, under MASS. GEN. LAWS ch. 265, § 15A (1999), is a crime involving moral turpitude; and (2) whether it is an aggravated felony.

At first, the IJ terminated removal proceedings after deciding that Petitioner had committed no crime involving moral turpitude. On appeal, the BIA reversed and decided Petitioner was removable because he had been convicted of a crime involving moral turpitude. The BIA remanded for a determination on Petitioner's eligibility for other forms of relief. Before the IJ, the Petitioner asked for

2

cancellation of removal under 8 U.S.C. § 1229b. The IJ decided Petitioner was eligible for cancellation of removal under 8 U.S.C. § 1229b(a) because he was a long-time permanent resident and his crime included insufficient force to be a crime of violence: getting Petitioner around the exclusion for those convicted of aggravated felonies. On appeal, the BIA decided Petitioner was not eligible for cancellation of removal because his crime was a crime of violence and therefore an aggravated felony.

## Standard of Review

"When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision." Hernandez v. U.S. Att'y Gen., 513 F.3d 1336, 1338-39 (11th Cir. 2008). When an alien who seeks review of a removal order has been convicted of an aggravated felony or a crime involving moral turpitude, this Court's jurisdiction to review the petition is limited to review of constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(C) and (D). Although the Court reviews whether a crime involves moral turpitude, and other questions of law, de novo, this Court will defer to the BIA's interpretation if it is reasonable. Sosa-Martinez v. U.S. Att'y Gen., 420 F.3d 1338, 1341 n.2 (11th Cir. 2005) (reviewing whether a crime involves moral turpitude), and Bahar v.

Ashcroft, 264 F.3d 1309, 1311 (11th Cir. 2001) ("[W]e will defer to the [BIA's] interpretation if it is reasonable.")

Discussion

To determine whether a petitioner's conviction is for a crime involving moral turpitude, we look first to the statute itself and apply the categorical inquiry adopted by the Supreme Court in Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). Matter of Cristoval Silva-Trevino, 24 I. & N. Dec. 687, 696-98 (A.G. 2008) (concluding that in evaluating whether an alien's prior offense is categorically one that involved moral turpitude, immigration judges should determine whether a realistic probability, not a theoretical possibility, exists that a criminal statute would be applied to reach conduct that does not involve moral turpitude); see also Serrato-Soto v. Holder, 570 F.3d 686, 689 (6th Cir. 2009) (applying the categorical approach to determine whether a crime involves moral turpitude). This inquiry requires categorical comparison of the elements of the statute of conviction to the generic definition of moral turpitude and a determination of whether there is a realistic probability that ch. 265, § 15A would be applied to conduct that falls outside the generic definition of a crime involving

4

moral turpitude.[1]  A petitioner can point to relevant cases or his own case to show that conduct outside the generic definition of moral turpitude has been punished by the statute.  See  Duenas-Alvarez, 549 U.S. at 193.  If this kind of conduct has been punished, then the offense is not a categorical crime involving moral turpitude; and an adjudicator must engage in a second-stage inquiry. Silva-Trevino, 24 I. & N. Dec. at 698-99.

"[T]he offense of assault and battery by means of a dangerous weapon under [ch. 265, § 15A], requires that the elements of assault be present, that there be a touching, however slight, that that touching be by means of the weapon, and that the battery be accomplished by use of an inherently dangerous weapon, or by use of some other object as a weapon, with the intent to use that object in a dangerous or potentially dangerous fashion." Com. v. Appleby, 380 Mass. 296, 308 (Mass. 1980) (internal citations omitted).  The Supreme Judicial Court of Massachusetts defined a dangerous weapon as one that is designed or constructed to produce great bodily harm or one that is capable of causing such harm.  Id. at 303-04.

The BIA has previously defined a violation of ch. 265, § 15A as "an offense

---

[1]A crime of moral turpitude involves "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man."  Sosa-Martinez, 420 F.3d at 1341 (internal quotations omitted).

5

involving an evil intent, as shown by the use of the . . . dangerous weapon–a crime involving moral turpitude." Matter of J-, 4 I. & N. Dec. 512, 515 (BIA 1951). This Court has already decided that intentional battery involving a deadly weapon is a crime involving moral turpitude. Sosa-Martinez, 420 F.3d at 1342. And we reject Petitioner's argument that his own conviction under the statute shows that the statute punishes conduct outside the realm of crimes involving moral turpitude. Though Petitioner claims his conviction came after he merely threw a pair of shoes at the victim, the BIA found Petitioner's use of the shoes as a dangerous weapon to be vile and having the potential to cause great harm. We determine that this circumstance is consistent with a crime involving moral turpitude. In our review, we see nothing about ch. 265, § 15A , including Petitioner's conviction under it, that makes us believe a realistic probability exists that it would be applied to reach conduct that does not involve moral turpitude. See Silva-Trevino, 24 I. & N. Dec. at 698 (citing Duenas-Alvarez, 549 U.S. at 193). Accordingly, we conclude that a violation of ch. 265, § 15A is categorically a crime involving moral turpitude.[2]

Although the BIA made its decision in 2007 without Silva-Trevino's guidance, we determine that the BIA's analysis was sound and that its conclusion

---

[2]Where the categorical approach is not dispositive, adjudicators engage in a second-stage inquiry. But having come to our conclusion based on the categorical inquiry, we need not do so here. See Silva-Trevino, 24 I. & N. Dec. at 698-99.

is consistent with the approach that is now controlling. The BIA reviewed the state statute and considered whether the statute punished crimes that BIA precedents have decided to be crimes involving moral turpitude. The BIA concluded that, while simple assault or battery was generally not a crime involving moral turpitude, an assault and battery that involves an aggravating dimension as an element, here a dangerous weapon, is elevated to one of moral turpitude. Keeping in mind both Silva-Trevino and our deferential standard of review of reasonable BIA determinations, we approve of the BIA's decision on this issue.

About whether Petitioner's conviction is a crime of violence, making it an aggravated felony, we turn to the statutory requirements.[3] The phrase "crime of violence" is defined in 18 U.S.C. § 16 as: "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." To determine

---

[3]A conviction for an aggravated felony makes an alien ineligible for cancellation of removal. 8 U.S.C. § 1229b(a)(3). An aggravated felony under 8 U.S.C. § 1101(a)(43)(F) is "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year." Because Petitioner was sentenced to at least one year, whether his crime is a disqualifying aggravating felony turns on whether his conviction is for a "crime of violence" under 18 U.S.C. § 16.

7

whether a conviction qualifies as a crime of violence, this Court looks to the elements and the nature of the offense of conviction, not the particular facts of a petitioner's crime. Hernandez v. U.S. Att'y Gen., 513 F.3d 1336, 1339 (11th Cir. 2008). The Supreme Judicial Court of Massachusetts explained that "intentional application of force " is an element of a violation of 265, § 15A. Appleby, 380 Mass. at 307. Accordingly, we conclude that the BIA did not err when it concluded that Petitioner's conviction is for a crime of violence and, therefore, an aggravated felony that made him ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3).

Conclusion

For the foregoing reasons, we affirm the BIA.

AFFIRMED.