[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15516
Non-Argument Calendar

_____

Agency No. A096-811-707

HUGHES MILCENT,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 24, 2017)

Before JULIE CARNES, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Hughes Milcent petitions for review of the BIA's decision affirming the IJ's order finding him removable for committing an offense that was a crime involving moral turpitude and denying his claims for withholding of removal and CAT relief. On appeal, Milcent argues that the BIA erred in determining that his Florida aggravated battery conviction qualified as a crime involving moral turpitude for purposes of INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C). Milcent also argues that his right to due process was violated by the IJ's decision not to allow Milcent's father to testify during Milcent's immigration hearing, and that the IJ erred when it made an adverse credibility determination against him.

On appeal, Milcent argues that the BIA erred in determining that his Florida aggravated battery conviction qualified as a crime involving moral turpitude for purposes of INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C). We "review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion. Insofar as the Board adopts the IJ's reasoning, we will review the IJ's decision as well." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted).

We are "obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 956 (11th Cir. 2005) (quotation omitted). We review *de novo* our subject-matter

jurisdiction. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). We lack jurisdiction to review any "final order of removal against an alien who is removable by reason of having committed [certain] criminal offense[s]," including aggravated felonies. INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C); INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i). However, we retain jurisdiction to determine "whether the statutory conditions for limiting judicial review exist." *Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1283 (11th Cir. 2009). In doing so, we must determine whether a petitioner is "(1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense" such as a crime of moral turpitude. *Id.* (quotation omitted). We also retain jurisdiction to review "constitutional claims or questions of law raised upon a petition for review." INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). By contrast, we do not have jurisdiction to review factual determinations by the IJ or BIA involving aliens who have committed a disqualifying offense. *Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1320 (11th Cir. 2007).

We review *de novo* the legal question of whether an alien's conviction qualifies as a crime involving moral turpitude. *Cano v. U.S. Att'y Gen.*, 709 F.3d 1052, 1053 (11th Cir. 2013). Moral turpitude is not defined by statute, but we have said that it involves an "act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary

to the accepted and customary rule of right and duty between man and man." *Id.*

In relevant part, Florida Statute § 784.045 states:

> (1)(a)  A person commits aggravated battery who, in committing battery:
>
>> 1.  Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
>>
>> 2.   Uses a deadly weapon.
>
> (b)  A person commits aggravated battery if the person who was the victim of the battery was pregnant at the time of the offense and the offender knew or should have known that the victim was pregnant.

Fla. Stat. § 784.045(1).  We have held that Florida aggravated battery convictions pursuant to Fla. Stat. § 784.045(1)(a) categorically qualify as crimes of moral turpitude.  *See Sosa-Martinez*, 420 F.3d 1338, 1341-42 (11th Cir. 2005).  While we have not decided whether a conviction under Fla. Stat. §784.045(1)(b) qualifies as a crime involving moral turpitude, we have held that actually and intentionally touching a woman who is known or should be known to be pregnant against her will in violation of § 784.045(1)(b) is not a violent felony for purposes of the Armed Career Criminal Act ("ACCA").  *United States v. Braun*, 801 F.3d 1301, 1303-04, 1307 (11th Cir. 2015).

In determining whether a particular offense is a crime involving moral turpitude, we have traditionally applied a categorical approach that focuses "on the statutory definition or nature of the crime, not the specific conduct predicating a particular conviction."  *Keungne*, 561 F.3d at 1284.  We have inquired into

"whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." *Id.* at 1284 n.3. If the statutory definition of a crime encompasses some conduct that would not categorically qualify as a crime involving moral turpitude, we apply the modified categorical approach and may examine the record of conviction, including the charging document, plea, verdict, and sentence. *Fajardo v. U.S. Att'y Gen.*, 659 F.3d 1303, 1305 (11th Cir. 2011). A criminal information may also be examined. *Shepard v. United States*, 544 U.S. 13, 17 (2005).

Under the prior precedent rule, we are "bound to follow a prior binding precedent unless and until it is overruled by this [C]ourt en banc or by the Supreme Court." *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (quotation omitted). "Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision." *Id.* at 1237.

We are bound by the prior panel precedent rule to hold that Milcent's conviction was categorically a crime involving moral turpitude. *Sosa-Martinez*, 420 F.3d at 1342; *Vega-Castillo*, 540 F.3d at 1236-37. Because Fla. Stat. § 784.045 arguably includes conduct that would not categorically qualify as a crime of moral turpitude, we apply the modified categorical approach. This permits us to view Milicent's amended information, which makes clear that he was convicted

under § 784.045(1)(a), the provision we have already held was categorically a crime of moral turpitude. Our jurisdiction is therefore limited pursuant to INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C).

Adverse credibility determinations are factual determinations. *See Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1344 (11th Cir. 2008). Similarly, whether an alien is statutorily eligible for withholding of removal is a factual determination, *Alim v. Gonzales*, 446 F.3d 1239, 1254 (11th Cir. 2006), as is the likelihood he will be tortured if returned to the country in question. *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1290-91 (11th Cir. 2014). On the other hand, how the BIA applied a legal standard to an undisputed fact pattern is a question of law. *Jean-Pierre*, 500 F.3d at 1322. But an alien merely arguing that he has shown that it is more likely than not that he will be tortured if returned to the country in question does not fall under that description. *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1280-81 (11th Cir. 2009).

Because determinations of credibility are factual, we may not consider Milcent's challenge to his adverse credibility determination on appeal. *See, e.g.*, *Mohammed*, 547 F.3d at 1344. Similarly, Milcent's argument that the BIA erred in determining that he was not statutorily eligible for withholding of removal is a factual determination, *Alim*, 446 F.3d at 1254, as are his arguments regarding the sufficiency of his evidence and the likelihood he will be tortured if returned to

6

Haiti, *Malu*, 764 F.3d  1290-91.  We therefore dismiss those claims for lack of jurisdiction.

Milcent also argues that his right to due process was violated by the IJ's decision not to allow Milcent's father to testify during Milcent's immigration hearing.  We review *de novo* due process challenges to the BIA's decision.  *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).  A petitioner must allege at least a colorable constitutional violation for us to retain jurisdiction over a final order of removal.  *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 (11th Cir. 2007).

Due process requires that an alien be given both notice and the opportunity to be heard in removal proceedings.  *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009).  To establish a due process violation, the petitioner must show that he was deprived of liberty without due process of law and that the purported errors caused him substantial prejudice.  *Id.* at 1276.  However, failing to receive relief that is purely discretionary does not deprive an alien of a liberty interest.  *Id.* at 1275.

Generally speaking, the IJ must consider all evidence introduced by an applicant.  *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005).  The Immigration Court Practice Manual states that the witness list should include the name and other relevant information for each witness.  U.S. Dep't of Justice, Exec. Office for Immig. Rev., Immigration Court Practice Manual ("Practice Manual"),

§ 3.3(g). The Practice Manual is "binding on the parties who appear before the Immigration Courts, unless the [IJ] directs otherwise in a particular case." *Id.* § 1.1(b). IJs have discretion to exclude evidence submitted after a court-ordered filing deadline, including statements from an alien's family. *Tang*, 578 F.3d at 1276.

Milcent's right to due process was not violated by the IJ's decision not to allow his father to testify during his immigration hearing. As an initial matter, because Milcent's father was not formally offered as a witness during the immigration hearing, it is unclear whether Milcent's alleged due process violation is colorable. Milcent cannot object to evidence not being admitted if it was never offered. *See Arias*, 482 F.3d at 1284. Even assuming Milcent has properly raised a due process violation, he has not identified what additional information his father was going to provide and how the lack of that information substantially prejudiced him. *Tang*, 578 F.3d at 1276. Accordingly, the IJ's decision not to allow Milcent's father to testify during Milcent's immigration hearing did not violate Milcent's right to due process.

**PETITION DENIED IN PART, DISMISSED IN PART**